*E-Filed 7/19/13*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JULIUS ROY BRAGG,

    Plaintiff,

    v.

ARNOLD SCHWARZENEGGER, et al.,

    Defendants.

No. C 10-4695 RS (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO EIGHTH AMENDMENT CLAIMS;**

**ORDER DIRECTING PLAINTIFF TO FILE AN AMENDED COMPLAINT REGARDING HIS ADA CLAIMS**

## INTRODUCTION

Plaintiff alleges that defendants, employees of Pelican Bay State Prison, violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs. Defendants move for summary judgment as to all defendants, with the exceptions of G.D. Lewis and Matthew Cate, who are, at plaintiff's request, TERMINATED from this action, and all claims against them DISMISSED with prejudice. For the reasons stated herein, defendants' motion for summary judgment is GRANTED as to his Eighth Amendment claims against all remaining defendants. **Plaintiff is directed to file on or before September 1, 2013 an amended complaint regarding his claim under the Americans with Disabilities Act ("ADA").**

**BACKGROUND**

The following factual allegations are undisputed unless otherwise indicated. During his incarceration at Pelican Bay, plaintiff complained to prison staff about several medical conditions: abdominal pain associated with his nephrotic syndrome, back pain, mobility impairment, pain in his arms and hands, a skin disorder, and a sleeping disorder. Plaintiff claims that defendants were deliberately indifferent with respect to all of his medical conditions, except his nephrotic syndrome.

**I.  Nephrotic Syndrome**

Although defendants' treatment of plaintiff's nephrotic syndrome is not the subject of any claim here, defendants contend that some of plaintiff's other alleged medical conditions were related to this illness. Defendants further contend that their diligent treatment of plaintiff's nephrotic syndrome is demonstrative of the frequent medical attention he received at Pelican Bay.

In January 2008, plaintiff was diagnosed with acute nephrotic syndrome, which is "a condition in which the kidneys are damaged, causing them to leak protein from the blood into the urine." (MSJ, Decl. Sayre at 3.) He was promptly referred to neurology specialist Dr. Robert LaClair. (*Id.*) Dr. La Clair examined the plaintiff regularly from February 2008, until November 2009, when plaintiff's nephrotic syndrome was found to be in complete remission. (*Id.*; Beltran Decl., Ex. F.) In 2010, Dr. LaClair continued to examine plaintiff to follow up on his condition. (Beltran Decl., Ex. F) From February 2008 to August 2010, plaintiff was seen by Dr. LaClair approximately thirteen times. (*Id.*, Ex. A.) Pelican Bay medical staff also examined plaintiff regarding his nephrotic syndrome to follow up on his appointments with Dr. LaClair. (*Id.*, Exs. H, I.)

While plaintiff was being treated by Dr. LaClair, plaintiff had a negative reaction to certain prescribed medication, Cytoxan, that caused increased back pain, muscle discomfort, and difficulty walking. (MSJ, Ex. G at 1–5.) Plaintiff was admitted to Sutter Coast Hospital where the prescription was discontinued and his condition improved dramatically. (*Id.* at 8.)

Although plaintiff does not claim that defendants were deliberately indifferent in treating this condition, he does argue that the failure to transfer him to a medical facility violated his Eighth Amendment rights. His requests for transfer were based on his nephrotic syndrome (Pl.'s Opp., Ex. C, L), which Dr. Sayre denied because Pelican Bay medical staff were properly treating his kidney disorder. (Pl.'s Opp., Ex. C at 7.)

**II. Back Pain**

Defendants' treatment of plaintiff's back pain is the subject of claims in this action. After plaintiff began experiencing back pain in 2005 (Compl. at 3), Pelican Bay Nurse Risenhoover ordered x-rays of plaintiff's lumbar spine in May of that year. (MSJ, Ex. K at 1). The x-ray showed that plaintiff suffered from Grade I spondylolisthesis, a diagnosis confirmed in June 2005 by further x-rays. (MSJ, Ex. K.) According to Dr. Sayre, spondylolisthesis is "the displacement of a vertebra or the vertebral column in relation to the vertebra below. Grade I spondylolisthesis is the lowest of five grades . . . [and] may be properly managed with conservative treatment including NSAID-type pain medications." (MSJ, Decl. Sayre at 2.)

According to plaintiff, his back pain became worse in 2007 thereby disrupting his sleep. (Compl. at 3.) It is undisputed that in April 2007, plaintiff reported to Dr. Rowe that he was exercising seven days a week for ninety minutes per day. (MSJ, Ex. L at 1.) Dr. Rowe denied plaintiff's requests for a third blanket to prop under his back and for an extra mattress because he deemed them medically unnecessary. (*Id.*)

Plaintiff again reported back pain in November 2008 when he complained of muscle discomfort. On November 18, 2008, plaintiff underwent MRIs of his lumbar and thoracic spine. (MSJ, Ex. M at 1.) The MRIs revealed no evidence of vertebral body, disk, or central canal lesions. (*Id.*) On November 19, 2008, Pelican Bay Dr. Capitano examined plaintiff regarding complaints of increased back pain, weakness, and difficulty walking, which were later discovered to be negative reactions to Cytoxan. (MSJ, Ex. G at 1–3.) As stated above, medical staff immediately transported plaintiff to Sutter Coast Hospital, where he was

promptly taken off Cytoxan. His health improved dramatically. (MSJ, Ex. G at 4–5.)

In March 2010, defendant Williams examined plaintiff's back and prescribed Naproxen. (MSJ, Ex. N.) In July 2010, x-rays of plaintiff's cervical, lumbar, and thoracic spine showed that plaintiff suffered from mild degenerative disk disease and mild anterior wedging on his thoracic spine. (MSJ, Ex. O.) Furthermore, the x-rays showed that plaintiff still had Grade I Spondylolisthesis. (*Id.*) According to Dr. Sayre, "[t]hese diagnoses essentially describe the normal wear of the spine generally associated with aging" and can be treated conservatively with NSAID-type pain medications, which plaintiff was receiving. (MSJ, Decl. Sayre at 2.)

### III. Mobility Impairment

Although plaintiff does not state specifically when he first began having difficulty walking, defendants did have plaintiff's feet and ankles X-rayed in 2006, which revealed "no evidence of fracture, dislocation or other abnormality." (MSJ, Decl. Sayre at 3.) Plaintiff also complained about mobility impairment in November 2008, after being prescribed Cytoxan for his nephrotic syndrome. (MSJ, Ex. G at 3–4.) As stated above, plaintiff was transported to Sutter Coast Hospital, where his prescription was discontinued, resulting in "dramatic improvement." (MSJ, Ex. G at 7.) According to the Sutter Coast Hospital "Discharge Summary," Dr. Gurov noted that plaintiff "was able to walk well with a steady gait, able to squat, stand from a chair, and do all the other activities without any problems." (*Id.*)

On March 13, 2009, Dr. Adam completed a Comprehensive Accommodation Chrono providing plaintiff with a permanent bottom bunk in a ground floor cell and permanent orthotic shoes. (MSJ, Ex. Q.) The chrono also noted that plaintiff could not be given a job assignment that required heavy lifting, prolonged walking, or climbing stairs. (*Id.*) The chrono was approved by Dr. Sayre on March 18, 2009. (*Id.*)

On June 16, 2010, plaintiff completed an Americans with Disabilities Act (ADA) appeal and described his disabilities as follows: "1) walking (problems with feet, numbness and

pain), 2) standing (balance and weakness), 3) chronic back pain (unable to straighten up at times), 4) painful arthritis, bone pain and paralysis." (Compl., Ex. G at 1.) Plaintiff requested a walking cane, hand rails for showering, therapy for arthritis, paralysis and pain management, and the use of an arm brace. (*Id.*) On July 2, 2010, Dr. Adam examined plaintiff regarding his appeal. Dr. Adam noted that plaintiff stated he was not currently exercising, but was able to do burpees in February. (MSJ, Ex. R at 2.) According to Dr. Adam's notes, plaintiff stated that he could walk but preferred not to and requested a wheelchair. Dr. Adam partially granted plaintiff's ADA request, providing plaintiff with a permanent bottom bunk in a ground floor cell, permanent orthotic shoes, permanent prescription glasses, and a permanent shower chair. (MSJ, Ex. S at 2.) The chrono also noted that plaintiff could not be given a job assignment that required heavy lifting or prolonged walking or standing for more than fifteen minutes. (*Id.*) Dr. Adam also completed a Disability Program Placement Verification form classifying plaintiff as mobility impaired, but able to walk 100 yards without assistive devices. (MSJ, Ex. S at 1.) Dr. Sayre approved both forms on July 8, 2010.

On August 19, 2010, Dr. Williams ordered x-rays of plaintiff's feet and ankles to address plaintiff's complaints of arthritis and pain. (MSJ, Ex. W.) The x-rays showed no acute fractures, dislocations, or deformities in plaintiff's feet.

Dr. Sayre completed a Medical Classification Chrono on March 25, 2011, indicating that plaintiff's job assignment could not require lifting more than ten pounds, prolonged walking, or standing longer than fifteen minutes. (MSJ, Ex. T.) Five days later, Dr. Martinelli completed a new Disability Placement Program Verification form for the plaintiff. (MSJ, Ex. U.) The form classified plaintiff as mobility impaired, but without the need for a wheelchair. (*Id.*) The form indicated that plaintiff was not able to walk 100 yards without pause. Dr. Sayre approved the form on April 4, 2011. (*Id.*)

## IV. Hand and Arm Pain

Plaintiff complained of pain in his arms and hands. In 2006, x-rays of plaintiff's hands and wrists revealed "no evidence of fracture, dislocation or other abnormality." (MSJ, Decl. Sayre at 3.)

In July 2010, Dr. Adam examined plaintiff regarding his ADA appeal. (MSJ, Ex. R at 1.) In plaintiff's appeal, he complained of "painful arthritis, especially in [his] fingers and right wrist," and also stated that at least twice a day his right hand became paralyzed. (Pl.'s Opp., Ex. G at 1.) He requested an arm brace, but according to Dr. Adam's notes, plaintiff informed medical staff to disregard the request as "[i]t was a mistake" on plaintiff's part. (MSJ, Ex. R at 2.)

Plaintiff was examined by Nurse Simmons on August 6, 2010, in response to complaints of pain and numbness in his hands. (MSJ, Ex. V.) The nurse noted that plaintiff was able to move all of his digits easily. (*Id.*)

On August 19, 2010, Dr. Williams ordered x-rays of plaintiff's right hand and right wrist to address plaintiff's arthritis. (MSJ, Ex. W.) Dr. Williams also prescribed acetaminophen and aspirin, along with a follow up appointment in two weeks to discuss the results of his x-rays. (*Id.*) On August 24, 2010, the X-ray results were obtained and showed that plaintiff's right hand had mild periarticular osteopenia, the slight thinning of the bones around the joints. (MSJ, Ex. X at 1.) In September 2010, Dr. Williams met with plaintiff to discuss the results of the x-rays, which suggested the possibility of osteoarthristis. (MSJ, Ex. Y.) Dr. Williams ordered a bone density test and another follow up appointment. (*Id.*) The bone density test was completed on January 14, 2011. (MSJ, Ex. Z.) Nurse Goff informed plaintiff that the risk of fracture was low. (*Id.*)

## V. Skin Disease

Plaintiff was diagnosed with perifolliculitis in 2004, and a cyst on the back of his head was surgically removed. Perifolliculitis is a scalp condition associated with inflammation of the skin around the hair follicles.

On March 6, 2009, Dr. Adam ordered vitamin A and D ointment to help plaintiff with his dry skin. (MSJ, Ex. AB.) On April 28, 2009, Dr. Adam also signed an order allowing plaintiff to use hair clippers on a weekly basis due to this medical condition. (MSJ, Ex. AA at 1–2.) Dr. Sayre approved the chrono on May 6, 2009. On August 9, 2010, plaintiff submitted an Inmate Health Care Appeal Form requesting his shaving chrono be renewed as razors caused him extreme pain and outbreaks. (Pl.'s Opp., Ex. B at 1.) In August 2010, Dr. Williams examined plaintiff and found that a "shaving chrono was not medically necessary." (*Id.* at 4.) Dr. Sayre approved the denial on September 13, 2010. (*Id.*) Plaintiff's request that his shaving chrono be renewed was denied at the third level of review because Dr. Williams found it was medically unnecessary and under California Code of Regulations, Title 15 § 3354, only authorized personnel may prescribe medication and health care treatments to inmates; inmates may not do so.

**VI. Sleeping Disorder**

Plaintiff claims that Dr. Adam violated his constitutional rights when she refused to treat him for a sleeping disorder. (Compl. at 3C.) Plaintiff also claims that Dr. Sayre violated his rights under the ADA by discriminating against him in light of his sleeping disorder. (Compl. at 3E.)

## DISCUSSION

**I.  Standard of Review**

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

## II. Claims

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical needs and the nature of the defendant's response to those needs. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (equating standard with that of criminal

recklessness). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id*. Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

In order to prevail on a claim of deliberate indifference to medical needs, a plaintiff must establish that the course of treatment the doctors chose was "medically unacceptable under the circumstances" and that they embarked on this course in "conscious disregard of an excessive risk to [plaintiff's] health." *See Toguchi v. Chung*, 391 F.3d 1051, 1058–60 (9th Cir. 2004). A claim of mere negligence related to medical problems, or a difference of opinion between a prisoner patient and a medical doctor, is not enough to make out a violation of the Eighth Amendment. *Id*.; *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

**A. Back Pain**

Plaintiff claims that defendants Adam, Sayre and Williams violated his Eighth Amendment right to be free from cruel and unusual punishment when they failed to refer him to a specialist, provide physical therapy, or provide stronger pain medication. (Compl. 3A). Defendants are entitled to summary judgment as a matter of law. The undisputed record shows that plaintiff received appropriate and reasonably timely medical treatment for his several medical conditions. Plaintiff was examined by Pelican Bay medical staff on numerous occasions regarding his back pain. Plaintiff's spine was X-rayed in 2005 and 2010, and plaintiff received an MRI of his spine in 2008. As both sets of x-rays revealed that plaintiff had the lowest grade of Spondylilthesis, defendants effectively managed plaintiff's back condition with NSAID pain medications. The x-rays obtained in 2010 also showed mild degenerative disk disease and mild anterior wedging, but according to Dr. Sayre, these diagnoses essentially describe the normal wear of the spine associated with aging. (MSJ, Decl. Sayre at 2.)

In November 2008, plaintiff complained of increased back pain, which was caused by his Cytoxan prescription for his nephrotic syndrome. Plaintiff was promptly transported to Sutter Coast Hospital's Emergency Room, where they discontinued plaintiff's medication. Plaintiff's health improved dramatically according to Dr. Gurov of Sutter Coast Hospital. (MSJ, Ex. G at 7.)

In response to plaintiff's complaint that he was not provided strong enough pain medication, the record shows that along with NSAID pain medications, Dr. Williams prescribed Naproxen in March 2010. Plaintiff was seen by medical staff on numerous occasions, received at least two sets of x-rays, MRIs, and pain medication; these actions show that defendants were aware of plaintiff's back pain, and sought to treat it, rather than reflecting deliberate indifference.

Plaintiff does not dispute that he received the above referenced treatment from defendants, but instead argues that defendants were deliberately indifferent to his medical needs when they refused to refer plaintiff to a specialist, provide physical therapy, or prescribe strong pain medication. However, a disagreement between the patient and a physician over treatment options does not approach deliberate indifference unless the plaintiff can show that the physician's treatment was "medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Toguchi*, 391 F.3d at 1058. Not providing plaintiff with a specialist, physical therapy or stronger pain medication was medically acceptable under the circumstances. Defendants instead chose to examine him multiple times, order x-rays and MRIs, and prescribe plaintiff NSAIDs and Naproxen. The fact that plaintiff, as opposed to defendants, believed his back pain required more serious treatment does not show that the latter acted with conscious disregard of an excessive risk to plaintiff's health, particularly given that plaintiff received x-rays and medication.

Plaintiff has therefore failed to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(a). Accordingly, plaintiff's claim of deliberate indifference

as to his back condition is DENIED.

### B. Mobility Impairment

Plaintiff claims that defendants Adam, Sayre, and Williams were deliberately indifferent to his mobility impairment because they failed to send him to an orthopedic specialist, evaluate his walking distance, or provide a walking aid. (Compl. at 3A.) Plaintiff claims that arthritis and numbness in his feet caused him problems such that he was unable to walk any distance without rest or aid. (*Id.*)

Defendants are entitled to summary judgment as a matter of law as to plaintiff's claims of mobility impairment. Plaintiff was seen by several Pelican Bay doctors who completed multiple Comprehensive Accommodation chronos and Disability Placement Program Verification forms. Dr. Adam completed Comprehensive Accommodation chronos in 2009 and 2010, providing plaintiff with a permanent bottom bunk in a ground floor cell, permanent orthotic shoes, permanent prescription glasses, and a permanent shower chair. The chronos also limited appropriate job assignments to those not requiring heavy lifting of more than ten pounds and no walking or standing for more than fifteen minutes. Dr. Adam also completed a Disability Program Placement Verification form classifying plaintiff as mobility impaired.

In March 2011, Dr. Sayre completed another chrono indicating the same job assignment limitation that Dr. Adam provided plaintiff in July. On March 30, 2011, Dr. Martinelli completed a new Disability Placement Program Verification form for plaintiff.

Furthermore, x-rays of plaintiff's ankles and feet were taken in 2006 and 2010. The 2010 x-rays show that there were no acute fractures, dislocations, or deformities present in plaintiff's left foot. The x-rays showed that plaintiff's right foot had a large anterior talar spur consistent with a talar beak, but no obvious bony coalition, acute fractures, dislocations, or abnormalities were identified. Both plaintiff's right and left ankles were intact with no fractures or dislocations. (MSJ, Ex. X at 2–3.)

Plaintiff does not dispute that he received the above referenced treatment from

defendants, but instead argues that defendants were deliberately indifferent to his medical needs when they refused to send plaintiff to an orthopedic specialist or provide him with a walking aid. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin*, 662 F.2d at 1344. Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference, *see Toguchi*, 391 F.3d at 1058, 1059-60. Therefore, not sending plaintiff to an orthopedic specialist or providing a walking aid was medically acceptable under the circumstances because defendants examined plaintiff on numerous occasions, completed Comprehensive Accommodation chronos, completed Disability Program Placement Verification forms classifying plaintiff as mobility impaired, and took x-rays of plaintiff's ankles and feet. Accordingly, plaintiff's claim of deliberate indifference as to his mobility impairment is DENIED.

### C. Arm and Hand Pain

Plaintiff claims that he experienced pain because his hands were tingling, and had "extreme bone pain." (Compl. at 3A.) Plaintiff states that a metal rod placed in his right arm during a previous surgery caused nerve damage. (Pl.'s Opp. at 15.) He further states that defendants Adam and Williams were deliberately indifferent when they refused to address plaintiff's pain and paralysis by failing to give him any relief, order any treatment, provide stronger pain medication, or fix his hand. (Compl. at 3C, Pl.'s Opp. at 7–8.)

Defendants are entitled to summary judgment as a matter of law as to plaintiff's claim of arm and hand pain. Plaintiff was examined by medical staff on multiple occasions regarding these complaints. X-rays of Plaintiff's hands and wrists were obtained in 2006, revealing no evidence of fracture, dislocation, or other abnormality. (MSJ, Decl. Sayre at 3.) Plaintiff received another set of x-rays in 2010, revealing that plaintiff has mild periarticular osteopenia in his right hand. According to Dr. Sayre, "[o]steopenia describes a bone mineral density that is slightly lower than normal, but not low enough to be classified as

osteoporosis." (*Id.*) In light of the x-rays, Dr. Williams ordered a bone density test and requested a follow up appointment. The results indicated that the risk of fracture was low. Defendants were not deliberately indifferent as they were aware of plaintiff's condition, and sought to treat it. This situation, again, shows nothing more than a disagreement over a particular choice of treatment and does not demonstrate deliberate indifference. *See Toguchi*, 391 F. 3d at 1058. Accordingly, plaintiff's claim of deliberate indifference as to his arm and hand pain is DENIED.

**D. Skin Disease**

Plaintiff claims that Dr. Williams and Dr. Sayre were deliberately indifferent to his skin condition by denying his request to have his shaving chrono renewed and canceling use of special shampoo and soaps. Defendants are entitled to summary judgment as a matter of law. The undisputed records show that plaintiff received appropriate and reasonably timely medical treatment. Since plaintiff's surgery in 2004 to remove a cyst, plaintiff's medical records do not indicate any subsequent complications arising from his skin condition. (MSJ, Decl. Sayre at 3.) Plaintiff was permitted to use hair clippers on a weekly basis in order to help manage his skin condition and to avoid any adverse episodes. He also was prescribed vitamin A and D ointment in response to complaints of dry skin. In 2010, after examining plaintiff regarding his request to have his shaving chrono renewed, Dr. Williams found that a shaving chrono was not medically necessary. These actions show that defendants were aware of plaintiff's skin condition, and sought to treat it.

Plaintiff claims that defendants cancelled weekly use of hair clippers, special shampoo and soap, and vitamin E cream and failed to provide plaintiff with any remedy to his skin disease. A disagreement between the patient and a physician over treatment options does not approach deliberate indifference. *Toguchi*, 391 F.3d at 1058. Plaintiff has failed to show that defendants acted with conscious disregard of an excessive risk to plaintiff's health, particularly given that plaintiff was examined by medical staff, provided a shaving chrono for a period of time, and prescribed ointment. Accordingly, plaintiff's claim of deliberate

indifference as to his skin condition is DENIED.

### E. Sleeping Disorder

Plaintiff's allegations as to his claimed sleeping disorder are vague and conclusory. He fails to provide any evidence that he was diagnosed with having a sleeping disorder or that this condition was a serious medical need. He also fails to explain with any detail, except that in 2007 his back pain was worsening and he was having trouble sleeping, how defendants were deliberately indifferent.

Plaintiff has therefore failed to set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(a). Accordingly, plaintiff's claim of deliberate indifference as to his sleeping disorder is DENIED.

### F. Eighth Amendment Claims Against Remaining Defendants

Because plaintiff's Eighth Amendment claims against Adam, Sayre, and Williams fail, his Eighth Amendment claims of supervisory liability against defendants Arnold Schwarzenegger and J. Clark Kelso, do as well. Accordingly, the motion for summary judgment is GRANTED in favor of Schwarzenegger and Kelso.

## CONCLUSION

### I. Eighth Amendment Claims

Plaintiff having failed to show that there are triable issues of material fact as to any of his Eighth Amendment claims, defendants' motions for summary judgment (Docket Nos. 51 and 55) are GRANTED as to all Eighth Amendment claims against defendants Nancy Adam, Michael Sayre, Claire Williams, Arnold Schwarzenegger, and J. Clark Kelso. Pursuant to plaintiff's request, his claims against defendants G.D. Lewis and Matthew Cate are DISMISSED WITH PREJUDICE. When this action is concluded, judgment will be entered in favor of all named defendants as to his Eighth Amendment claims. Plaintiff's motion to compel discovery (Docket No. 56) is DENIED as moot. The Clerk shall terminate Docket Nos. 51, 55, and 56.

**II. ADA Claim**

As the scope of plaintiff's ADA claim is not entirely clear, plaintiff may file an amended complaint limited to that theory against defendants Adam, Sayre, and Williams. Any claims not included in the amended complaint will be deemed waived. **Such amended complaint must be filed on or before September 15, 2013.** If plaintiff fails to file such an amended complaint by such time, the Court will (1) deem plaintiff to have waived all claims, state and federal, arising from the operative set of facts in this case, (2) enter judgment in favor of all remaining defendants as to all claims, and (3) terminate the action.

**IT IS SO ORDERED**.

DATED: July 19, 2013

RICHARD SEEBORG
United States District Judge